UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

№ 07-CV-4042 (JFB) (ARL)

---

BARBARA WAGNER,

Plaintiff,

VERSUS

COUNTY OF NASSAU,
THE NASSAU COUNTY FIRE COMMUNICATIONS CENTER,
AND THE NASSAU COUNTY FIRE COMMISSION,

Defendants.

---

**MEMORANDUM AND ORDER**
August 28, 2009

---

JOSEPH F. BIANCO, District Judge:

Plaintiff *pro se* Barbara Wagner ("plaintiff" or "Wagner") brings the above-captioned civil rights action against defendants County of Nassau ("the County"), the Nassau County Fire Communications Center, and the Nassau County Fire Commission ("the Fire Commission") (collectively, "defendants"), alleging that defendants failed to hire her for the position of Fire Communications Technician I ("FCT I") because of her gender and in retaliation for reporting that alleged discrimination to the New York State Division of Human Rights ("NYSDHR"), in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII"). Plaintiff seeks compensatory damages by way of back pay, as well as injunctive relief ordering defendants to promote her to the FTC I position.

Defendants now move, unopposed, for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, arguing that plaintiff had a full and fair opportunity to litigate claims arising from the alleged factual nexus in state administrative proceedings and, therefore, the instant suit is barred by *res judicata* and collateral estoppel. Defendants further submit that, even if the instant action is not so barred, the undisputed facts do not give rise to a cognizable Title VII claim as a matter of law and no material issues of fact remain for trial. Despite plaintiff's failure to oppose this motion, the Court has conducted an independent review of the record,

including the transcript of the plaintiff's New York State Division of Human Rights trial and relevant excerpts from plaintiff's deposition, and finds that summary judgment is warranted.[1] The Court concludes that, although plaintiff's claim is not barred by prior proceedings, there are no genuine issues of material fact for trial and, construing the evidence in the light most favorable to plaintiff, no rational trier of fact could conclude that defendants acted with discriminatory or retaliatory intent in choosing not to hire her. Specifically, with respect to plaintiff's June 2000 interview for FTC I position, the two male candidates who were hired either out-ranked her or tied her on the list and, thus, were at least as well-qualified as plaintiff. With respect to the March 2001 interview, the two male individuals who were hired were well-qualified (with extensive prior experience in fire districts) despite scoring five points lower than plaintiff on the civil service examination and the Fire Commission received a negative reference from a former supervisor at plaintiff's prior employment at the Westbury Fire and Water District, who strongly urged that the Fire Commission not hire plaintiff based upon performance problems at her prior employment. With respect to the December 2001 interview, the Fire Commission selected a male individual who was well-qualified and had the highest score of all test-takers on the August 1999 exam to fill the position and was obviously aware of plaintiff's negative reference from March 2001. Finally, in October 2002, both male candidates who were selected scored higher than plaintiff on the civil service examination. In short, defendants have articulated legitimate non-discriminatory reasons for each of the hiring decisions, and plaintiff has offered no evidence to support her position that the decisions were pretext for gender discrimination or retaliation. Accordingly, defendants' motion is granted.

I. BACKGROUND

A. Facts

The Court has taken the facts described below from the parties' affidavits, exhibits, and defendants' Local Civil Rule 56.1 statement of facts ("Defs.' 56.1").[2] Upon

---

[1] The Second Circuit has clearly established that a district court may not grant an unopposed summary judgment motion without carefully analyzing the moving papers to determine whether the moving party satisfies its burden of demonstrating that there are no material issues of fact for trial. *See Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) ("[W]here the non-moving party 'chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial.'") (quoting *Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001)).

[2] The Court notes that plaintiff has failed to file and serve a response to defendants' Rule 56.1 statement of facts, in violation of Local Civil Rule 56.1. Generally, a "plaintiff['s] failure to respond or contest the facts set forth by the defendants in their Rule 56.1 statement as being undisputed constitutes an admission of those facts, and those facts are accepted as being undisputed." *Jessamy v. City of New Rochelle*, 292 F. Supp. 2d 498, 504 (S.D.N.Y. 2003) (quoting *NAS Elecs., Inc. v. Transtech Elecs. PTE Ltd.*, 262 F. Supp. 2d 134, 139 (S.D.N.Y. 2003)). However, "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (citations omitted); *see also*

consideration of a motion for summary judgment, the Court shall construe the facts in the light most favorable to the non-moving party. *See Capobianco v. New York*, 422 F.3d 47, 50 (2d Cir. 2001).

Plaintiff, a resident of the County of Nassau, first took the civil service examination required to qualify for the FCT I position in 1994. (Defs.' 56.1 ¶ 24.) She has applied for and taken numerous open competitive civil service examinations for various titles publicized and offered by the Nassau County Civil Service Commission, including two open competitive examinations for the FCT I position in 1999 and 2002. (Defs.' 56.1 ¶ 25.) FCT I's are tasked with answering incoming emergency phone calls, identifying the correct fire department for dispatch, and dispatching that department; they must further ensure that all equipment is properly working, maintain records regarding the operation of that equipment, and schedule necessary repairs. (Defs.' 56.1 ¶¶ 28-29.) FCT I's must have a high school degree and five years of volunteer service with a fire department in Nassau County. (Defs.' 56.1 ¶ 30.) Applicants for the FCT I position submit an application, pay a fee, and are then notified if they are qualified to take an upcoming civil service examination. (Defs.' 56.1 ¶¶ 31-32.) The Fire Commission requests a list of qualified applicants, who are ranked by their examination score, and mails letters of interest to the three highest scoring applicants within two months of receiving the list. (Defs.' 56.1 ¶¶ 33-35.)

The Fire Commission then interviews each of the interested candidates and chooses one applicant by majority vote. (Defs.' 56.1 ¶ 37.) The interviews are conducted with approximately eleven to fifteen individuals present, including the nine voting commissioners, and typically last around fifteen minutes. (Defs.' 56.1 ¶¶ 38-40.) All candidates are asked general questions related to the candidate's relevant experience, previous employment, familiarity with Nassau County locations, and reactions to hypothetical situations. (Defs.' 56.1 ¶ 41.) At the conclusion of all interviews, the commissioners deliberate and select an applicant; they do not discuss gender in these deliberations. (Defs.' 56.1 ¶¶ 42-43.)

Plaintiff scored a seventy-five on the 1999 exam, tying for eighth on the list, and was therefore not "reachable" as a top three scorer under the Civil Service Law when a position opened on May 25, 2000. (Defs.' 56.1 ¶¶ 47-49.) Seven candidates were sent canvas letters, including one woman who did not wish to interview, and the open FCT I positions were filled by three men. (Defs.' 56.1 ¶¶ 50-51.) Eventually, plaintiff's name became "reachable" as a result of appointments and declinations of candidates who outranked her on the list. (Defs.' 56.1 ¶ 53.) Plaintiff was interviewed on June 27,

---

*Gilani v. GNOC Corp.*, No. 04 Civ. 2935 (ILG), 2006 U.S. Dist. LEXIS 23397, at *4-5 (E.D.N.Y. Apr. 26, 2006) (exercising court's discretion to overlook the parties' failure to submit statements pursuant to Local Civil Rule 56.1). Accordingly, in the exercise of its broad discretion and given plaintiff's *pro se* status, the Court will overlook this defect and will deem admitted only those facts in defendants' Rule 56.1 statement that are supported by admissible evidence and not controverted by other admissible evidence in the record. *See Jessamy*, 292 F. Supp. 2d at 504. Thus, in the instant case, although plaintiff has failed to submit any opposition to defendants' motion, the Court has carefully reviewed the record and determined that the undisputed facts demonstrate that her claims create no material issues of fact and cannot survive summary judgment, as set forth *infra*.

2000 with two other male candidates, Gregg Spaulding, who outranked her on the list, and Ronald Kahan, who tied her on the list. (Defs.' 56.1 ¶¶ 54-57.) The Fire Commission selected Spaulding for the position, and appointed Kahan to an available FCT I position on August 14, 2000. (Defs.' 56.1 ¶¶ 58-59.)

On March 20, 2001, plaintiff again interviewed with six other male candidates to fill two positions. (Defs.' 56.1 ¶ 60.) While considering plaintiff's application, the Fire Commission received information from one of her references, a former supervisor of plaintiff's during her employment at the Westbury Fire and Water District, who strongly suggested that she not be selected because of her difficulty taking direction and resentful mannerisms when offered criticism. (Defs.' 56.1 ¶¶ 71-75.) Two males were hired who were well-qualified for the position, but scored five points lower than plaintiff on the civil service examination. (Defs.' 56.1 ¶ 61; Defs.' Ex. Q, at 2.)

On May 11, 2001, plaintiff filed a verified complaint with the NYSDHR and the Equal Employment Opportunity Commission ("EEOC"), alleging unlawful discriminatory employment practices. (Defs.' 56.1 ¶ 2.) On December 6, 2001, plaintiff again interviewed for an open position. (Defs.' 56.1 ¶ 63.) The voting chairmen for the Fire Commission were aware of her complaint on or before December 6, 2001. (Defs.' 56.1 ¶ 65.) Plaintiff's answers during her interview were "pointed" and "sharp." (Defs.' 56.1 ¶ 68.) The Fire Commission selected the individual with the highest score on the August 1999 examination to fill the position. (Defs.' 56.1 ¶ 69.) That applicant, who was male, interviewed three times before his selection. (Defs.' 56.1 ¶ 76.) On December 31, 2001, plaintiff amended the May 11, 2001 complaint to add a charge of retaliation based on her non-selection. (Defs.' 56.1 ¶ 66.) Plaintiff was not the only individual from the August 1999 list who was interviewed multiple times without selection. (Defs.' 56.1 ¶ 76.)

After the August 1999 examination list expired, plaintiff again took the civil service examination for the FCT I position in October 2002. (Defs.' 56.1 ¶ 77.)[3] Plaintiff received a score of eighty, tying her for eleventh on the rankings list. (Defs.' 56.1 ¶ 76-2.) The Fire Commission canvassed the top six scorers, including a female who was tied with four other males for the second-highest score; after interviews had been conducted, the Fire Commission selected two males, the first of which had the highest score of all test-takers, and the second of which was tied for second. (Defs.' 56.1 ¶¶ 77-81.)

On March 24, 2004, the NYSDHR issued a Determination and Order after Investigation concluding that there was no probable cause to believe that defendants had engaged in unlawful discriminatory practices. (Defs.' 56.1 ¶ 4.) On May 14, 2004, General Counsel for the Commissioner applied, pursuant to 9 N.Y. C.C.R. § 465.20(a), to consider whether the finding should be vacated and remanded to the Regional Director for further investigation. (Defs.' 56.1 ¶ 5.) On July 6, 2004, General Counsel ordered that the finding be vacated and remanded to the Regional Director, who adopted the finding on July 15, 2004 and referred the matter to an Administrative Law Judge. (Defs.' 56.1 ¶¶ 6-7.)

---

[3] Defendants' 56.1 statement of facts has two paragraphs numbered 76 and 77; the Court will refer to the second such paragraphs as 76-2 and 77-2, respectively.

4

Public hearing sessions were held on September 22-23, 2005 and June 13, 2006, and all parties appeared at the hearing, represented by counsel. (Defs.' 56.1 ¶ 8.) Plaintiff's allegations of discrimination and retaliation, as set forth in her federal complaint before the undersigned, were adjudicated based on the merits in the proceeding before the Administrative Law Judge. (Defs.' 56.1 ¶¶ 9-11.) By Recommended Order dated April 24, 2007, Administrative Law Judge Vespoli found that defendants did not violate New York State Human Rights Law § 296 by discriminating against plaintiff based on her gender or retaliating against her based on protected activity, and recommended dismissal of plaintiff's May 11, 2001 complaint and December 31, 2001 amended complaint. (Defs.' 56.1 ¶¶ 13-14.) Plaintiff submitted objections to the Recommended Order, which was adopted, issued and ordered by the Commissioner of the NYSDHR on June 14, 2007. (Defs.' 56.1 ¶¶ 15-16.) Plaintiff did not appeal the findings of the Administrative Law Judge to the Supreme Court of the State of New York, Nassau County. (Defs.' 56.1 ¶ 17.) On August 6, 2007, the EEOC adopted the findings of the NYSDHR, dismissed the EEOC complaint, and issued plaintiff a "right to sue" letter. (Defs.' 56.1 ¶¶ 18-19.) Plaintiff timely commenced the instant action on September 27, 2007. (Defs.' 56.1 ¶ 20.)

### B. Procedural History

Plaintiff filed this action on September 27, 2007. Defendants answered the complaint on November 7, 2007. Defendants requested leave to file the instant motion on December 4, 2008, and the Court held a pre-motion conference with all parties on December 22, 2008, at which time the Court set a briefing schedule. Defendants filed their motion on February 13, 2009, and served the same on plaintiff, which included the Local Civil Rule 56.2 Notice informing plaintiff that: "the claims you assert in your complaint may be dismissed without a trial if you do not respond to this motion." Plaintiff failed to respond to defendants' motion. Defendants filed a letter on April 1, 2009, noting that the motion was unopposed and requesting that the Court enter an Order granting judgment in favor of defendants. Defendants mailed a copy of this letter to plaintiff at her listed address. Plaintiff never responded to that letter or contacted the Court following receipt of that letter. This matter is fully submitted. The Court has fully considered the submissions of the parties.

### II. STANDARD OF REVIEW

The standards for summary judgment are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may not grant a motion for summary judgment unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Globecon Group, LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 170 (2d Cir. 2006). The moving party bears the burden of showing that he or she is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (summary judgment is unwarranted if "the evidence is such that a

reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (emphasis in original)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." 477 U.S. at 249-50 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Id.* at 247-48 (emphasis in original). Thus, the nonmoving party may not rest upon mere conclusory allegations or denials, but must set forth "concrete particulars" showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (internal quotations omitted). Accordingly, it is insufficient for a party opposing summary judgment "merely to assert a conclusion without supplying supporting arguments or facts." *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (internal quotations omitted). The Second Circuit has provided additional guidance regarding summary judgment motions in discrimination cases:

> We have sometimes noted that an extra measure of caution is merited in affirming summary judgment in a discrimination action because direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions. *See, e.g., Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994). Nonetheless, "summary judgment remains available for the dismissal of discrimination claims in cases lacking genuine issues of material fact." *McLee v. Chrysler Corp.*, 109 F.3d 130, 135 (2d Cir. 1997); *see also Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001) ("It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases.").

*Schiano v. Quality Payroll Sys.*, 445 F.3d 597, 603 (2d Cir. 2006) (quoting *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 69 (2d Cir. 2001)).

### III. DISCUSSION

Plaintiff alleges, under Title VII, that defendants discriminated against her by failing to hire her for the FCT I position, and repeating the same when she again applied for the position in retaliation for reporting the earlier, allegedly discriminatory behavior. Defendants argue that plaintiff had a full and fair opportunity to litigate any claims arising from those factual allegations in the underlying state proceedings and, therefore, her Title VII claim is barred by res judicata and/or collateral estoppel. They further submit that her claim fails to survive summary judgment on the merits, given the undisputed

6

facts. As set forth below, the Court finds that plaintiff's Title VII claim is not barred by earlier state administrative action, but that plaintiff fails to raise any genuine issues of material fact on the merits of her claims.

A. Plaintiff's Claim Is Not Barred By Prior State Agency Proceedings

The doctrine of res judicata, otherwise known as claim preclusion, prevents parties from re-litigating issues in subsequent litigation that were or could have been litigated in a prior action. *See Allen v. McCurry*, 449 U.S. 90, 94 (1980). The doctrine applies only if "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000) (citations omitted). "In determining whether a second suit is barred by this doctrine, the fact that the first and second suits involved the same parties, similar legal issues, similar facts, or essentially the same type of wrongful conduct is not dispositive. Rather, the first judgment will preclude a second suit only when it involves the same 'transaction' or connected series of transactions as the earlier suit; that is to say, the second cause of action requires the same evidence to support it and is based on facts that were also present in the first." *Maharaj v. Bankamerica Corp.*, 128 F.3d 94, 97 (2d Cir. 1997) (internal citation omitted). Therefore, as the Second Circuit has noted, "the obvious starting point in a preclusion analysis is a determination of the issues that were litigated in the first action." *Flaherty v. Lang*, 199 F.3d 607, 613 (2d Cir. 1999).

"[C]ollateral estoppel . . . means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Leather v. Eyck*, 180 F.3d 420, 424 (2d Cir. 1999) (quoting *Schiro v. Farley*, 510 U.S. 222, 232 (1994)). "Collateral estoppel, like the related doctrine of res judicata, has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979). "Under New York law, collateral estoppel bars relitigation of an issue when (1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action." *In re Hyman*, 502 F.3d 61, 65 (2d Cir. 2007) (citations omitted); *accord Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 94 (2d Cir. 2005). "The party seeking the benefit of collateral estoppel bears the burden of proving the identity of the issues, while the party challenging its application bears the burden of showing that he or she did not have a full and fair opportunity to adjudicate the claims involving those issues." *Khandhar v. Elfenbein*, 943 F.2d 244, 247 (2d Cir. 1991) (citing *Kaufman v. Eli Lilly & Co.*, 482 N.E.2d 63, 67 (N.Y. 1985)).

In the instant matter, defendants assert that plaintiff's Title VII claim is barred under both doctrines by the proceedings before the Administrative Law Judge because both complaints assert the same causes of action against the same defendants, arising from the same alleged conduct, and plaintiff received a full and fair opportunity to litigate her initial complaint in the state administrative proceedings. Indeed, Congress has clearly

7

stated that "judicial proceedings [of the courts of any state] . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the court of such State . . . from which they are taken." 28 U.S.C. § 1738. However, defendants' argument that the instant action is barred suffers from a fundamental misunderstanding of this statute, for the proceedings at issue here were not conducted by a state *court*, but rather by a state *agency*, because plaintiff never sought judicial review of the NYSDHR determination in state court. The Supreme Court has addressed this very issue and expressly determined that "Congress did not intend [for] unreviewed state administrative proceedings to have preclusive effect on Title VII claims." *Univ. of Tenn. v. Elliott*, 478 U.S. 788, 796 (1986). In *Elliott*, as is the case here, plaintiff brought a claim of discrimination against defendant and was granted a full hearing before a state administrative judge where he was represented by counsel and permitted to call and cross-examine witnesses. *Id*. at 79-192. After the administrative law judge found no liability on the part of defendants, plaintiff did not seek judicial review of that determination in state court, but rather asserted his claims, including a Title VII claim, in federal court, arising from the same factual nexus. *Id*. at 792. The Supreme Court determined that, because Title VII specifically mandates that the EEOC "give 'substantial weight to final findings and orders made by State or local authorities in proceedings commenced under State or local [employment discrimination] law,' . . . it would make little sense for Congress to write such a provision if state agency findings were entitled to preclusive effect in Title VII actions in federal court." *See id*. at 795 (alterations in original); *see also Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 728 (2d Cir. 2001) ("§ 1738 only requires that federal courts give full faith and credit to decisions of state courts, and has no application to the decisions of state administrative agencies . . . . Consequently, unreviewed decisions of state administrative agencies will not bar a subsequent de novo trial under Title VII in federal court."); *compare Kremer v. Chem. Constr. Corp.*, 456 U.S. 461 (1982) (NYSDHR determination of "no probable cause" which was reviewed and affirmed by state court barred subsequent Title VII action); *Brya v. N.Y. Life Ins.*, 851 F.2d 60 (2d Cir. 1988) (NYSDHR determination of "no probable cause" affirmed by state court on statute of limitations grounds barred subsequent Title VII action because New York courts treat dismissal on statute of limitations grounds as dismissal on the merits); *Hanrahan v. Riverhead Nursing Home*, 593 F. Supp. 2d 487, 493 (E.D.N.Y. 2009) (state court dismissal of Article 78 proceedings appealing adverse NYSDHR determination barred Title VII claim). In the instant case, the NYSDHR finding of no probable cause was never reviewed by a state court and, therefore, does bar plaintiff's Title VII claim. *See Jeter v. N.Y. City Dep't of Educ.*, 549 F. Supp. 2d 295, 304 (E.D.N.Y. 2008) ("Jeter did not seek review of either DHR decision in state court, thus, those administrative decisions cannot preclude Jeter's Title VII claims."); *Johnson v. County of Nassau*, 411 F. Supp. 2d 171, 179 n.4 (E.D.N.Y. 2006) ("Unreviewed decisions of state administrative agencies will not bar a subsequent trial de novo under Title VII . . . .").

### B. Plaintiff's Title VII Claim Fails as a Matter of Law

Plaintiff claims that defendants discriminated against her based on her gender in the terms and conditions of her employment when they failed to hire her for the position of FCT I and retaliated against

8

her for reporting that alleged discriminatory behavior by again refusing to hire her for the same position. Defendants argue that plaintiff has failed to raise any genuine issues of material fact suggesting gender or retaliatory intent was a factor in the Fire Commission's decision not to hire her. As set forth below, the Court agrees and determines, construing the evidence in the light most favorable to plaintiff and drawing all reasonable inferences therefrom, that no rational finder of fact could conclude that defendants' failure to hire plaintiff was motivated by gender-based or retaliatory animus.

### 1. Gender Discrimination

Because plaintiff presents no direct evidence of discriminatory treatment based on her gender, the Court reviews her claim under the three-step, burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). To establish a *prima facie* case of discrimination under Title VII, a plaintiff must show (1) membership in a protected class; (2) satisfactory job performance; (3) an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 567 (2d Cir. 2000). The Second Circuit has characterized the evidence necessary for the plaintiff to satisfy this initial burden as "minimal" and "de minimis." *See Zimmermann v. Assocs. First Capital Corp.*, 251 F.3d 376, 381 (2d Cir. 2001).

Once plaintiff establishes a *prima facie* case, the burden shifts to the defendant to "'articulate some legitimate, nondiscriminatory reason for the' termination." *Patterson v. County of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004) (quoting *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 311 (1996) (quoting *McDonnell Douglas*, 411 U.S. at 802)). If the defendant carries that burden, "the burden shifts back to the plaintiff to demonstrate by competent evidence that 'the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'" *Patterson*, 375 F.3d at 221 (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). "'The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Id*. (quoting *Texas Dep't of Cmty. Affairs*, 450 U.S. at 253).

To meet this burden, the plaintiff may rely on evidence presented to establish her prima facie case as well as additional evidence. Such additional evidence may include direct or circumstantial evidence of discrimination. *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 99-101 (2003). It is not sufficient, however, for a plaintiff merely to show that she satisfies "*McDonnell Douglas*'s minimal requirements of a prima facie case" and to put forward "evidence from which a factfinder could find that the employer's explanation . . . was false." *James v. N.Y. Racing Ass'n*, 233 F.3d 149, 153 (2d Cir. 2000). Instead, the key inquiry is whether there is sufficient evidence in the record from which a reasonable trier of fact could find in favor of plaintiff on the ultimate issue, that is, whether the record contains sufficient evidence to support an inference of discrimination. *See id.*; *Connell v. Consol. Edison Co. of N.Y., Inc.*, 109 F. Supp. 2d 202, 207-08 (S.D.N.Y. 2000).

As the Second Circuit observed in *James*, "the way to tell whether a plaintiff's case is sufficient to sustain a verdict is to analyze the particular evidence to determine whether it reasonably supports an inference of the facts plaintiff must prove – particularly

9

discrimination." 233 F.3d at 157; *see also Norton v. Sam's Club*, 145 F.3d 114, 118 (2d Cir. 1998) ("The thick accretion of cases interpreting this burden-shifting framework should not obscure the simple principle that lies at the core of anti-discrimination cases. In these, as in most other cases, the plaintiff has the ultimate burden of persuasion.").

Regarding the final prong of the *McDonnell Douglas* framework, it is well-settled that a plaintiff can raise an inference of discrimination by showing disparate treatment – namely, that a similarly situated employee outside the protected group received more favorable treatment. *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977); *accord Carter v. New Venture Gear, Inc.*, No. 07 Civ. 4672, 2009 WL 393611, at *2 (2d Cir. Feb. 18, 2009); *see also Mandell v. County of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003); *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 95 (2d Cir. 1999). The law does not require the employees to be similarly situated in all respects, but rather requires that they be similarly situated in all *material* respects. *McGuinness v. Lincoln Hall*, 263 F.3d 49, 54 (2d Cir. 2001) ("A plaintiff is not obligated to show disparate treatment of an identically situated employee."); *accord Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 63 (2d Cir. 1997).

As a threshold matter, defendants do not dispute that plaintiff has satisfied the first three prongs of the *McDonnell Douglas* analysis in this context – namely, that she belongs to a protected class of females, she was qualified for the position at issue, and that the failure to promote constitutes an adverse employment action. The Court thus turns to whether plaintiff has raised any genuine issues of material fact regarding discriminatory intent.

Plaintiff became eligible for the position of FCT I in 2000 and claims that defendants refused to hire her after her interviews in June of 2000 and March of 2001 because she is female. Regarding the March 2001 interview, it is undisputed that the two male candidates who interviewed with plaintiff and were ultimately hired for the position were well-qualified,[4] despite having scored lower than plaintiff on the civil service examination. It is further undisputed that the Fire Commission received a negative reference from plaintiff's former employer while evaluating her candidacy for the FCT I position at that time. Specifically, Peter Meade, assistant chief fire marshal for fire and rescue services who regularly checks applicants' references for the Fire Commission, spoke with Vitallo Vacchio, superintendent of the Westbury Fire and Water District and plaintiff's former employer, who informed Meade that "[plaintiff] had trouble with accepting supervision" and led Meade to believe "that she prefer[red] to work independent of direct oversight." (Defs.' Ex. V, at 376.) Vacchio further stated that "[plaintiff] was resentful

---

[4] Specifically, the Administrative Law Judge noted that the first candidate had experience in three different fire districts, dating back to 1980, was certified as an emergency medical dispatcher, and submitted six positive letters of recommendation, while the second candidate worked on the Crash Fire Rescue team at American Port Service, served for five years as a dispatcher in the Farmingdale Fire Department immediately prior to his application for the FTC I position, and was certified in at least six areas, including hazardous materials, CPR, and high angle ropes rescue. (*See* Defs.' Ex. W, ¶ 17.) By comparison, while plaintiff is certified as an emergency medical technician and has experience volunteering for fire departments in Westbury and Uniondale, she had not worked in communications for a fire department since 1998. (*See id.*, ¶¶ 3-4.)

10

when she receive[d] criticism" and he "strongly urged that [the Fire Commission] not hire her." (*Id.*) There is no evidence suggesting that either of the two individuals hired for the position had any such negative recommendations. Accordingly, those individuals were not similarly situated to plaintiff in all *material* respects. *See, e.g., Santiago v. City of N.Y.*, No. 05-CV-3668 (RRM) (VVP), 2009 WL 935720, at *10 (E.D.N.Y. Mar. 31, 2009) (applicant for promotion with history of job absences not similarly situated to applicants without record of absenteeism); *Levitant v. N.Y. Human Res. Admin.*, 625 F. Supp. 2d 85, 2008 WL 5273992, at *13 (E.D.N.Y. Dec. 18, 2008) (applicant for promotion with pending disciplinary charges was not similarly-situated to one without such charges); *Baluta v. Hicksville Union Free Sch. Dist.*, No. 94-CV-1871 FB, 2000 WL 335770, at *10 (E.D.N.Y. Mar. 15, 2000) (applicant for teaching position with negative performance reviews in his personnel file was not similarly situated to applicant without such reviews).

However, when plaintiff first interviewed for the position in June 2000, her negative work evaluation was not considered by the Fire Commission. It is undisputed, though, that the two male candidates who interviewed at the same time and were ultimately hired for the position scored either equal to or higher than plaintiff on the civil services exam, and plaintiff has not contested that either individual was well qualified for the job. As the Second Circuit has recognized, "[i]n our diverse workplace, virtually any decision in which one employment applicant is chosen from a pool of qualified candidates will support a slew of prima facie cases of discrimination. The rejected candidates are likely to be older, or to differ in race, religion, sex, and national origin from the chosen candidate. Each of these differences will support a prima facie case of discrimination, even though a review of the full circumstances may conclusively show that illegal discrimination played no part whatever in the selection." *Fisher v. Vassar Coll.*, 114 F.3d 1332, 1337 (2d Cir. 1997). In the instant case, even assuming *arguendo* that the simple fact of plaintiff's gender sustained a prima facie case of gender discrimination, it does not defeat summary judgment on her ultimate claim. The hired candidates either equaled or exceeded plaintiff's score on a neutral examination and met the other hiring criteria. Defendants are entitled to exercise discretion in their hiring choices. Plaintiff has raised no issues of material fact suggesting that defendants' decision not to hire her was motivated by discriminatory animus, and, indeed, she does not dispute that the hired individuals were at least equally qualified. In the absence of *any* evidence suggesting discriminatory intent, "a jury cannot infer discrimination from thin air." *Norton v. Sam's Club*, 145 F.3d 114, 119 (2d Cir. 1998).[5] Accordingly, plaintiff's claim of gender discrimination based upon defendants' failure to hire her after the June 2000 interview must fail. *See DiLegge v. Gleason*, 131 F. Supp. 2d 520, 526 (S.D.N.Y. 2001) ("Plaintiff at his deposition admitted that he was not better qualified to be a lieutenant than [the hired candidate], although he claims to be

---

[5] The Court recognizes that when a litigant seeks to demonstrate discriminatory intent through a showing of disparate impact, evidence that other members of the protected class were also adversely affected is relevant. However, in the instant matter, only one female other than plaintiff was "reachable" on the August 1999 examination list, and that individual chose not to interview. Accordingly, the fact that the other female eligible for the position was also not hired does not give rise to an inference of discriminatory animus on the part of defendants.

11

equally qualified. Here again, the subjective factors permitted in exercising judgment to appoint one out of three from a civil service list of qualified applicants may properly be considered by Defendants without engaging in violation of federal law, when an equally qualified applicant is appointed."). Thus, defendants' motion for summary judgment on plaintiff's Title VII gender claim arising from their failure to hire her after the June 2000 and March 2001 interviews is granted.

## 2. Retaliation

Under Title VII, it is unlawful "for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e-3(a). The Court evaluates a Title VII retaliation claim under the three-step, burden-shifting framework used for an adverse employment claim, as outlined *supra*. First, a plaintiff must establish a prima facie case of retaliation by demonstrating that "(1) the employee was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action." *Gregory v. Daly*, 243 F.3d 687, 700 (2d Cir. 2001) (quoting *Reed v. A. W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir. 1996)). In determining whether a plaintiff has satisfied this initial burden, the court's role in evaluating a summary judgment request is "to determine only whether proffered admissible evidence would be sufficient to permit a rational finder of fact to infer a retaliatory motive." *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005). The burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for the employment action and if he carries that burden, it shifts back to plaintiff to demonstrate by competent evidence that the reasons proffered by defendant were pretext for retaliatory animus based upon the protected Title VII activity. *See Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006).

In the instant action, defendants do not contest that plaintiff has satisfied the first three prongs of a prima facie retaliation case, but argue that she has failed to meet the fourth prong, by showing a causal connection between the protected activity and the alleged retaliation. Specifically, they note that while temporal proximity between the protected activity and the adverse action can often establish causation, the time period between those events in the instant case – seven months – is insufficient as a matter of law to meet this requirement without any corroborating evidence suggesting retaliatory intent. As set forth below, plaintiff has produced no evidence to support a causal connection between the filing of the complaint and any adverse actions. In any event, even assuming *arguendo* that plaintiff could establish a prima facie case, defendant is entitled to summary judgment because defendant has set forth legitimate, non-retaliatory reasons for their hiring decision in December 2001, and there is no evidence in the record from which to create a material issue of fact as to whether defendant acted in retaliation for plaintiff's complaint of discrimination.[6]

---

[6] To the extent that plaintiff is also attempting to challenge the December 2001 decision on the basis of gender (in addition to retaliation), the claim cannot survive summary judgment for the same reason – defendants have articulated their non-discriminatory reasons for the hiring decision and there is no evidence from which a rational jury could conclude otherwise.

12

A plaintiff may establish a causal connection between the protected activity and the adverse employment action either through direct evidence of retaliatory animus, or by circumstantial evidence. *See Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990). Assuming that there is no direct evidence of such animus, proof of causation may be shown indirectly, by demonstrating that the protected activity was followed closely by a retaliatory action. *Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 217 (2d Cir. 2001) ("The causal connection needed for proof of a retaliation claim 'can be established indirectly by showing that the protected activity was closely followed in time by the adverse action.'") (quoting *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir. 1996) (quoting *Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988))); *Gordon v. N.Y. City Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000). However, "[t]he cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close' . . . . [Alleged retaliatory a]ction taken (as here) 20 months later suggests, by itself, no causality at all." *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) (citations omitted); *cf. Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.*, 444 F.3d 158, 168 (2d Cir. 2006) ("[T]he lapse of only several months after the letter and several weeks after the press conference between the protected speech and the adverse employment action is sufficient to support an allegation of a causal connection strong enough to survive summary judgment."); *Ashok v. Barnhart*, 289 F. Supp. 2d 305, 315 (E.D.N.Y 2003) ("[A] period of only two months between a protected activity and an adverse action may permit a reasonable jury to find the acts to be temporally proximate and causally related").

However, because the Second Circuit has found periods well beyond two months to be sufficient to suggest a causal relationship under certain circumstances, courts must carefully consider the time lapse in light of the entire record. *See, e.g., Grant v. Bethlehem Steel Corp.*, 622 F.2d 43, 45-46 (2d Cir. 1980) (holding eight-month gap between EEOC complaint and retaliatory action suggested a causal relationship); *see also Richardson v. N.Y. State Dep't of Corr. Serv.*, 180 F.3d 426, 446-47 (2d Cir. 1999), *abrogated on other grounds*, *Burlington N. & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006) (holding abusive acts within one month of receipt of deposition notices may be retaliation for initiation of lawsuit more than one year earlier). Thus, the court should consider a time lapse on a case-by-case basis in light of the entire record, which the Court has done here.

After carefully reviewing the record in this case and drawing all reasonable inferences in plaintiff's favor, the Court declines to conclude as a matter of law that plaintiff has failed to demonstrate a causal link between her discrimination complaints and the failure to hire plaintiff in December 2001. In any event, even assuming *arguendo* that such evidence of causation and a prima facie case existed, summary judgment would still be warranted, as set forth below, because of the legitimate, non-discriminatory reason for the decision and the lack of any evidence from which retaliatory pretext can be found by a rational jury.

Defendants have established a legitimate, non-discriminatory reason for their failure to hire plaintiff in December 2001, namely, the unfavorable review from her former employer

and his strong recommendation against hiring her. Indeed, this negative reference was sufficient to dissuade defendants from hiring her when she interviewed in March 2001, prior to the filing of her NYSDHR complaint. There is nothing in the record to suggest that this negative reference carried less weight nine months later. In addition, the male individual selected was well-qualified and, in fact, received the highest score of all test-takers on the August 1999 exam. Furthermore, defendants found plaintiff's answers in the December 2001 interview to be "sharp" and "pointed," which further influenced their decision not to hire her. Defendants have, therefore, offered a non-pretextual reason for their failure to hire plaintiff that effectively rebuts the prima case of retaliation. The burden thus shifts to plaintiff to demonstrate by competent evidence that this reason was pretextual. *See Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006). She simply has not done so, and the Court has found no evidence in the record based upon its own review to support any such contention. Therefore, reviewing the record in the light most favorable to plaintiff and drawing all reasonable inferences therefrom, the Court concludes that no rational finder of fact could determine that defendants did not hire plaintiff after the December 2001 in retaliation for filing a discrimination complaint.[7]

In sum, the Court has conducted a careful, independent review of the record and determined that no genuine issues of material fact exist regarding defendants' alleged discriminatory and retaliatory intent in failing to hire plaintiff. Plaintiff offers nothing more than conclusory allegations in her complaint and in her testimony, with no basis in fact, that she was discriminated/retaliated against and, thus, there is no evidence from which to create a genuine issue of material fact for trial. *See Winkfield v. City of N.Y.*, No. 97-CV-2183 (HB), 1999 U.S. Dist. LEXIS 19193, at *14 (S.D.N.Y. Dec. 14, 1999) ("[P]laintiff has failed to come forward with any evidence whatsoever and relies on conclusory allegations and his own belief alone. That's just not enough.") (citing *Holt v. KMI-Continental*, 95 F.3d 123, 130 (2d Cir. 1996) (summary judgment properly granted on her retaliation claim where plaintiff failed to put forth any evidence other than own personal belief that defendant's articulated nondiscriminatory reason was pretextual)); *see also Cobb v. Pozzi*, 363 F.3d 89, 108 (2d Cir. 2003) (holding that a First Amendment retaliation claim cannot be based on "conclusory assertions of retaliatory motive";

---

[7] Similarly, to the extent plaintiff may be trying to claim gender discrimination and/or retaliation in connection with a later opening in October 2002, such claim also cannot survive summary judgment. After the August 1999 list expired, plaintiff took the civil service examination for the FCT I position again in October 2002. Plaintiff received a score of eighty, which put her in a tie for eleventh place on the rankings list compiled by the NCCSC. The Fire Commission canvassed the top six test scorers, including a female who received a score of ninety on the test, which was the second highest score, tying her with four other males. The female candidate was interviewed, along with two other males who tied her on the test, and a male candidate who received the highest score on the examination. The female candidate was not selected for the two open positions and claimed that the selection process was biased (including because she was asked about a license revocation during the interview). However, there is no evidence in the record of any basis for conclusory allegations of gender discrimination in connection with the October 2002 selection process as to plaintiff or any other female candidates and no evidence of retaliation against plaintiff in connection with that decision.

rather, "[plaintiff] must produce 'some tangible proof to demonstrate that [his] version of what occurred was not imaginary'") (quoting *Morris v. Lindau*, 196 F.3d 102, 111 (2d Cir. 1999)) (alteration in original); *D'Amico v. City of N.Y.*, 132 F.3d 145, 149 (2d Cir. 1998) (holding that a party opposing summary judgment "may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful"); *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991) (holding that "bald assertion[s], completely unsupported by evidence" cannot defeat summary judgment). Therefore, summary judgment is warranted dismissing plaintiff's complaint in its entirety.

### IV. CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is GRANTED. The Clerk of the Court shall enter judgment accordingly and close this case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: August 28, 2009
       Central Islip, New York

\* \* \*

Plaintiff represents herself *pro se*. The attorney for defendants is Peter J. Famighetti, Esq., Nassau County Attorney's Office, One West Street, Mineola, New York 11501.